# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| PATRICIA MERKOVICH and ANNE O'BOYLE, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br>vs.<br><br>CAPITAL MANAGEMENT SERVICES, L.P.,<br><br>      Defendant. | Case No.: 18-cv-786<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Patricia Merkovich is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Anne O'Boyle is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

6. Defendant Capital Management Services, L.P. ("CMS") is a debt collection agency with its principal offices located at 698 ½ South Ogden Street, Buffalo, New York.

7. CMS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. CMS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. CMS is a "debt collector" as defined in 15 U.S.C. § 1692a.

## FACTS

### *Facts Related to July 23, 2017 Letter to Merkovich*

10. On or about July 23, 2017, CMS mailed a debt collection letter to Plaintiff Merkovich regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

11. Upon information and belief, the alleged debt that CMS was attempting to collect was incurred by use of a "Macy's" store-brand credit account, owned and serviced by Department Stores National Bank ("DSNB"), and used only for personal, family or household purposes including purchases of personal and home goods from Macy's.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Merkovich inserted by computer.

13. Upon information and belief, Exhibit A is a form debt collection letter used by CMS to attempt to collect alleged debts.

14. Upon information and belief, Exhibit A is the first written communication Merkovich received from CMS.

15. Exhibit A contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail to the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different than the current creditor.

Exhibit A.

16. The header in Exhibit A states:

> Original Creditor: (DSNB) DEPARTMENT STORES NATIONAL BANK
> Current Creditor: (DSNB) DEPARTMENT STORES NATIONAL BANK
> Description: MACY'S
> Account #: XXXXXXXXXX4701
> AMOUNT ENCLOSED: _____
> Amount of Debt: $3887.50

Exhibit A.

17. The body in Exhibit A states:

> This company has been engaged by MACY'S to resolve your delinquent debt of $3887.50.

Exhibit A.

18. Exhibit A states that the "Current Creditor" is DSNB.

19. Exhibit A also states that Macy's engaged CMS to resolve the debt.

20. DSNB and Macy's are two distinct business entities.

21. Merkovich was misled and confused by Exhibit A.

22. The unsophisticated consumer would be confused by Exhibit A.

3

*Facts Related to November 10, 2017 and December 9, 2017 Letters to Merkovich*

23. On or about November 10, 2017, CMS mailed another debt collection letter to Merkovich regarding the same alleged debt as referenced in Exhibit A. A copy of this letter is attached to this complaint as Exhibit B.

24. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff Merkovich inserted by computer.

25. Upon information and belief, Exhibit B is a form debt collection letter used by CMS to attempt to collect alleged debts.

26. Exhibit B contains the following settlement offer:

> On behalf of Department Store National Bank, Capital Management Services, LP. is willing to accept less than the full balance due as a settlement on your MACY'S account. The settlement offer shall be $1788.25, due in our office on or before 11/24/2017. We are not obligated to renew this offer. However, additional opportunities to settle this account may be available at a later date.

Exhibit B.

27. Exhibit B states that CMS is willing to settle the debt for about 46% of the full balance due.

28. Exhibit B further states that payment of the settlement amount is "due in our office on or before 11/24/2017."

29. Exhibit B states that CMS is "not obligated to renew this offer."

30. On or about December 9, 2017, CMS mailed another debt collection letter to Merkovich regarding this same alleged debt. A copy of this letter is attached to this complaint as Exhibit C.

31. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Merkovich inserted by computer.

32. Upon information and belief, Exhibit C is a form debt collection letter used by CMS to attempt to collect alleged debts.

33. Exhibit C contains the following settlement offer:

> On behalf of Department Store National Bank, Capital Management Services, LP. is willing to accept less than the full balance due as a settlement on your MACY'S account. The settlement offer shall be $1788.25, due in our office on or before 12/23/2017. We are not obligated to renew this offer. However, additional opportunities to settle this account may be available at a later date.

Exhibit C.

34. Exhibit C states that CMS is willing to settle the debt for about 46% of the full balance due.

35. Exhibit C further states that payment of the settlement amount is "due in our office on or before 12/23/2017."

36. Exhibit C states that CMS is "not obligated to renew this offer."

37. The representation in Exhibit B that the settlement offer was "due in our office on or before 11/24/2017" is false, deceptive, misleading, and confusing to the unsophisticated consumer.

38. Upon information and belief, the settlement offers in Exhibits B - C are part of a chain of pre-set offers.

39. Upon information and belief, if the consumer mailed a payment in the amount stated, and this amount was received after the "due" date, CMS would process the payment as a settlement of the debt.

40. Merkovich was misled and confused by Exhibits B and C.

41. The unsophisticated consumer would be confused by Exhibits B and C.

### *Facts Related to December 9, 2017 and January 11, 2018 Letters to Plaintiff O'Boyle*

42. On or about December 9, 2017, CMS mailed a debt collection letter to O'Boyle regarding an alleged debt owed to DSNB. A copy of this letter is attached to this complaint as Exhibit D.

43. Upon information and belief, the alleged debt that CMS was attempting to collect with Exhibit D was incurred by use of a Macy's store-brand credit account, owned and serviced by DSNB, and used only for personal, family or household purposes including purchases of personal and home goods from Macy's.

44. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff O'Boyle inserted by computer.

45. Upon information and belief, Exhibit D is a form debt collection letter used by CMS to attempt to collect alleged debts.

46. Exhibit D contains the following settlement offer:

> On behalf of Department Store National Bank, Capital Management Services, LP. is willing to accept less than the full balance due as a settlement on your MACY'S account. The settlement offer shall be $282.96, due in our office on or before 12/23/2017. We are not obligated to renew this offer. However, additional opportunities to settle this account may be available at a later date.

Exhibit D.

47. Exhibit D states that CMS is willing to settle the debt for about 76% of the full balance due.

48. Exhibit D further states that payment of the settlement amount is "due in our office on or before 12/23/2017."

49. Exhibit D states that CMS is "not obligated to renew this offer."

50.     On or about January 11, 2018, CMS mailed another debt collection letter to O'Boyle regarding this same alleged debt. A copy of this letter is attached to this complaint as Exhibit E.

51.     Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to O'Boyle inserted by computer.

52.     Upon information and belief, Exhibit E is a form debt collection letter used by CMS to attempt to collect alleged debts.

53.     Exhibit E contains the following settlement offer:

> On behalf of Department Store National Bank, Capital Management Services, LP. is willing to accept less than the full balance due as a settlement on your MACY'S account. The settlement offer shall be $282.96, due in our office on or before 01/25/2018. We are not obligated to renew this offer. However, additional opportunities to settle this account may be available at a later date.

Exhibit E.

54.     Exhibit E states that CMS is willing to settle the debt for about 46% of the full balance due.

55.     Exhibit E further states that payment of the settlement amount is "due in our office on or before 1/25/2017."

56.     Exhibit E states that CMS is "not obligated to renew this offer."

### FDCPA Violations

### *Misrepresentation of the Creditor*

57.     The representations in Exhibit A that DSNB is the "current creditor" but that CMS was "engaged by MACY'S" is facially contradictory, and false and misleading. *See Deschaine v. Nat'l Enter. Sys.*, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013) ("Naming an entity as 'Client' and a different entity as 'Current Creditor' especially where the 'Client' is named more often than the 'Current Creditor' plausibly could create confusion . . .");

*Walls v. United Collection Bureau, Inc.*, 2012 U.S. Dist. LEXIS 68079, at *5-6 (debt collection letter stating one entity was a "Client" and another entity was the "Current Owner" of the debt did not identify the creditor clearly); *Braatz v. Leading Edge Recovery Solutions, LLC*, 2011 U.S. Dist. LEXIS 123118, at *3 (N.D. Ill. Oct. 20, 2011) (letter attempting to collect consumer's "delinquent CITIBANK account" on behalf of debt buyer did not disclose name of creditor because the "unsophisticated consumer might just as reasonably conclude that what she believed to be a single debt was now owed to separate companies (LVNV and Citibank). Such confusion might cause an unsophisticated consumer to be concerned about the possibility she was being defrauded or that she might pay the incorrect creditor and continue to have outstanding debt."); *Aribal v. GMAC Mortg.*, 2013 U.S. Dist. LEXIS 105355, at *12-13 (N.D. Ill. July 29, 2013) ("although it identifies Partners as a creditor[,] the language suggests that another entity, namely, the recorded holder of the security deed, may also be a potential creditor."); *Pardo v. Allied Interstate, LLC*, 2015 U.S. Dist. LEXIS 125526, at *8-9 (S.D. Ind. Sept. 21, 2015) ("the inclusion of two entities who are willing to accept payment on the debt might lead an unsophisticated consumer to conclude that his debt was now owed to two separate companies (LVNV and Resurgent Capital)."); *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132-33 (E.D.N.Y. June 29, 2007) (statement that "The debt identified was sold by CHASE, all of your rights and obligations regarding this contract have been assigned to this office" did not clearly disclose the identity of the creditor); *Wong v. Phelan Hallinan & Diamond, PC*, 2015 U.S. Dist. LEXIS 82986, at *14-16 (D.N.J. June 25, 2015) (plaintiff stated FDCPA claims where collection letter incorrectly identified loan servicer as creditor to whom the debt was owed).

58. Upon information and belief, DSNB is the current creditor, not Macy's.

8

59. If the consumer sent a check to "Macy's" instead of DSNB, the payment may not satisfy the alleged debt owed to the creditor, who would be within its rights to continue collection efforts or even file a lawsuit to collect the debt.

60. In addition, the consumer may be barred from recovering a payment to the incorrect party by the voluntary payment doctrine. Even if the voluntary payment doctrine does not apply or would not be enforced, the logistical challenge of obtaining a refund would discourage consumers from attempting to recover their erroneous payment.

*Misrepresentation of the Settlement Offer*

61. The representations and in Exhibits B and D that the settlement offer was "due in our office on or before [a date certain]" is false, deceptive, misleading, and confusing to the unsophisticated consumer.

62. Upon information and belief, the settlement offers in Exhibits B, C, D and E are part of a chain of pre-scheduled offers.

63. Upon information and belief, if the consumer mailed a payment in the amount stated, and this amount was received after the "due" date, CMS would process the payment as a settlement of the debt.

64. A false statement that a settlement offer is only available for a limited time is a material false statement because it imparts a false belief in the unsophisticated consumer that he or she must hurry to take advantage of the limited-time opportunity, when in reality, there is no such time limit. *See Nelson-McGourty v. L. & P Fin. Adjusters, Inc.*, 2010 U.S. Dist. LEXIS 81819, *44 (N.D. Ill. Aug. 12, 2010); *see also Ozkaya v. Telecheck Servs.*, 982 F. Supp. 578, 584 (N.D. Ill. Oct. 23, 1997); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007).

9

65. In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory*, 505 F.3d 769 at 775-76.

66. Although Exhibits B, C, D and E contain the *Evory* safe-harbor language, where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion. *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed . . ."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor . . . for the kind of suit Bartlett has brought and now won. The qualification 'for the kind of suit that Bartlett has brought and now won' is important. We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also Al v. Van Ru Credit Corp.,* No. 17-CV-1738-JPS, 2018 U.S. Dist. LEXIS 70321 *8-10 (E.D. Wis. Apr. 26, 2018); *O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor

language where the Seventh Circuit expressly limited the reach of the language to different claims).

67. The *Evory* case specifically concerned debt collectors that used deadlines to confuse or mislead consumers about whether they were making "one-time" offers.

68. "The safe harbor language in *Evory* did not authorize debt collectors to present deadlines in collection letters *that were in fact non-existent*." *DeGeorge v. Fin. Recovery Servs.*, 2012 U.S. Dist. LEXIS 140966, at *20 (E.D. Penn. Sept. 27, 2012) (emphasis added).

69. Plaintiffs were misled and confused by Exhibits B, C, D and E.

70. The unsophisticated consumer would be confused by Exhibits B, C, D and E.

### *The FDCPA*

71. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of

11

the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL

1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

72. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

73. The FDCPA requires debt collectors to provide certain information and notices to consumers within five days of the initial contact with the consumer:

> (a) **Notice of debt; contents**
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (2) the name of the creditor to whom the debt is owed;

15 U.S.C. § 1692g(a)(2).

74. To satisfy § 1692g(a)(2), the debt collector must state the name of the creditor in a non-confusing manner:

> The recipients of these letters would therefore find themselves obliged to guess who currently owned the debts in question. Since the name was on

13

> the letters, some might correctly guess that Asset Acceptance was the current creditor, but a lucky guess would have nothing to do with any disclosure the letters provided. Complaince with the clear requirements of § 1692g(a)(2) demands more.

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016).

75. Failure to provide the required disclosures within five days of the initial communication with Plaintiffs and the class is a *per se* violation of the FDCPA. *Janetos*, 825 F.3d at 324 ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a)."); *see also, e.g., Walls*, 2012 U.S. Dist. LEXIS 68079, at *5 ("We reject defendants' contention in their reply brief that what plaintiff is complaining of is 'immaterial' information. The statute expressly requires identification of the creditor to whom the debt is owed . . . .").

76. For purposes of Plaintiffs' claims under 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10), Defendant's omission is a material violation of the FDCPA.

77. Misrepresentation of the creditor's identity is a misrepresentation of the character and legal status of the debt. 15 U.S.C. § 1692e(2)(A). *Janetos*, 825 F.3d at 324 ("Knowing the current creditor 'potentially affects the debtor in the most basic ways, such as what the debtor should write after 'pay to the order of' on the payment check to ensure that the debt is satisfied.") (quoting *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 488 (E.D.N.Y. Mar. 1, 2013).

78. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

79. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

14

80. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

**COUNT I – FDCPA**

81. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

82. Count I is brought on behalf of Plaintiff Merkovich.

83. Exhibit A states that the "Current Creditor" is DSNB.

84. Exhibit A states that Defendant was engaged by Macy's to collect the debt.

85. Upon information and belief, Macy's is not the current creditor of these accounts and did not place the debt with Defendant for collection.

86. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692g(a), and 1692g(a)(2).

**COUNT II – FDCPA**

87. Plaintiffs incorporate by reference as if fully set forth herein the allegations in the preceding paragraphs of this Complaint.

88. Count II is brought on behalf of both Plaintiffs.

89. Exhibits B and D stated that the settlement offer was "due in our office on or before" a particular due date.

90. On the date Defendant mailed Exhibits B and D to Plaintiffs, and mailed letters in the same form to the class members, Defendant intended to send a pre-scheduled settlement offer in the form of Exhibits C and E to Plaintiffs and the class, even if the recipient of the offers in the form of Exhibits B and D did not respond to the offers therein.

91. Upon information and belief, if a payment in the amount offered to settle the debt was received after the purported due date, CMS would have accepted this amount in satisfaction of the account.

92. Defendant violated 15 U.S.C. § 1692e and 1692e(10).

## CLASS ALLEGATIONS

93. Plaintiffs bring this action on behalf of two Classes.

94. Class I consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter, (c) stating that DSNB is the current creditor of the debt, (d) and also stating that CMS was engaged by Macy's to collect the debt, (e) where the debt was incurred for personal, family or household purposes, (f) and the letter was mailed between May 23, 2017 and May 23, 2018, inclusive, (g) and was not returned by the postal service. Plaintiff Merkovich is the designated representative for Class I.

95. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters, (c) where one letter in the series made a settlement offer while stating the settlement amount was "due in our office on or before [a date certain]," (d) and where the subsequent letter(s) made identical offers to settle a debt, (e) where the debt was incurred for personal, family or household purposes, (f) and the final letter in the series was mailed between May 23, 2017 and May 23, 2018, inclusive, (g) and was not returned by the postal service.

96. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

97. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

98. Plaintiffs' claims are typical of the claims of the members of each Class. All are based on the same factual and legal theories.

99. Plaintiffs will fairly and adequately represent the interests of the members of each Class. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

100. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

101. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 23, 2018

**ADEMI & O'REILLY, LLP**

By: s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)

jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com